**CABAZON BAND OF MISSION INDIANS, et al.**

v.

**Larry D. SMITH, et al.**

**No. CV–97–4687 CAS(JGx).**

United States District Court,
C.D. California.

Dec. 2, 1998.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT ON SECOND AND THIRD
CLAIMS FOR RELIEF

SNYDER, District Judge.

## I. *Introduction*

Plaintiffs, the Cabazon Band of Mission Indians and Paul D. Hare, in his capacity as Director, Cabazon Public Safety Department, have moved for summary judgment on the second and third claims respectively for de-

claratory and injunctive relief against defendants Larry D. Smith, individually, and as Sheriff of Riverside County, Ronald F. Dye, individually, and as Captain of the Riverside County Sheriff's Department, Indio Station and the County of Riverside. The present motion concerns the asserted right of uniformed and armed Cabazon Public Safety Department officers to travel on public highways across non-Indian lands in marked tribal police vehicles equipped with emergency light bars. It is undisputed that the California Vehicle Code would prohibit the operation of the Cabazon Band's police units on those highways with uncovered emergency light bars. The legal issue presented is whether California law is preempted by the Tribe's sovereign authority to establish and operate a police department to enforce the criminal law on reservation lands.

For the reasons stated below, the Court denies plaintiffs' motion for summary judgment as to the second and third claims for relief.

## II. *Factual Background*

The dispute in this case requires consideration of the relationship between federal, state, and tribal law regarding the law enforcement powers of the Cabazon Band of Mission Indians. The Cabazon Band has created a Public Safety Department which provides civil and criminal law enforcement services on the reservation. The Department currently has fourteen officers who patrol the reservation in marked police vehicles.

As a result of disputes with defendants regarding the authority and jurisdiction of the Public Safety Department, plaintiffs filed the instant suit seeking declaratory and injunctive relief. The parties initially filed cross motions for summary judgment on the first claim for relief which sought a determination as to whether Public Law 83–280 ("P.L.280")[1] divested the Cabazon Band of the authority to establish and operate a tribal police force. After hearing these cross motions on April 29, 1998, the Court ruled that P.L. 280 did not divest the authority of the Cabazon Band "to establish a police force

---

1. P.L. 280, enacted in 1953, and codified at 18 U.S.C. § 1162, granted certain states (including California) the power to enforce state criminal laws in Indian Country.

with jurisdiction to enforce tribal criminal law against Indians and to detain and turn over to state or local authorities non-Indians who commit suspected offenses on the reservation." Order entered on April 30, 1998, at 11.

The present motion for summary judgment as to plaintiffs' second and third claims for relief is brought by plaintiffs following the Court's order granting summary judgment on the first claim for relief.[2] The Cabazon Indian Reservation is made up of four separate sections of land, with approximately thirteen road miles separating the most distant sections. Due to geographical and physical barriers, it is not possible to drive between the different sections without leaving the reservation. In order for the Cabazon Public Safety Department to provide law enforcement services to all sections of the reservation, the Department's vehicles must leave the reservation and drive across sections of public highways located in the County of Riverside which are non-Indian lands.

Uniformed and armed Cabazon Public Safety officers drive dark blue vehicles marked on the sides and the rear with the words "Tribal Law Enforcement" and with the name "Cabazon" marked on the sides. Each vehicle is also equipped with a shotgun locked to the dashboard. These vehicles have United States government license plates issued by the Bureau of Indian Affairs. The vehicles previously had emergency light bars affixed to the roofs of the vehicles. However, the Tribe's police officers were stopped and cited by local law enforcement agencies for violations of the California Vehicle Code when driving police vehicles with the light bars in place. The light bars have been removed pending the resolution of this controversy.

In the present motion, plaintiffs seek summary adjudication on the second and third claims for declaratory and injunctive relief.[3] Plaintiffs initially phrased their request for relief in general terms: "[W]hether the Tribe's authority to operate a public safety department includes the right of uniformed and armed Cabazon Public Safety Officers to travel between the noncontiguous portions of the Cabazon Indian Reservation in distinctively marked tribal police vehicles equipped with emergency light bars in order to carry out their law enforcement duties." Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 1.[4]

Specifically, plaintiffs seek a determination that the Cabazon Band's police is not subject to the provisions of the California Vehicle Code which establish who can operate "authorized emergency vehicles" as defined in California Vehicle Code § 165.[5] Under Cali-

---

2. Defendants have not filed a cross·motion for summary judgment on these two claims. At the November 2, 1998 hearing on the present motion, defendants' counsel acknowledged that because this motion presents a pure question of law, the Court would be required to enter judgment on the second and third claims for relief either in favor of plaintiffs or in favor of defendants. The parties have since stipulated to dismiss the fourth claim for relief without prejudice, so that this order, together with the Court's order entered on April 30, 1998, will dispose of this action.

3. Plaintiffs' second claim for relief seeks a declaratory judgment allowing tribal officers to "lawfully travel on official business across non-Indian lands in marked and designated Cabazon Public Safety Department vehicles while carrying Department-issued equipment, including firearms." Complaint, ¶27. The third claim for relief seeks an injunction preventing defendants from arresting officers of the Cabazon Public Safety Department traveling across non-Indian lands in marked and designated Department police vehicles while on official business. Complaint, ¶30.

4. As noted below, defendants have apparently agreed that uniformed and armed Cabazon Public Safety Department officers may travel across non-Indian land in marked police units in order to reach different sections of the reservation, so long as their emergency light bars are covered. Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment dated October 2, 1998, at 2. The Cabazon Public Safety Department consists of two divisions: a Law Enforcement Division and a Fire Department Division. Declaration of Paul D. Hare, ¶2. The controversy in this case concerns vehicles operated by the Department's Law Enforcement Division.

5. These "authorized emergency vehicles" are exempted from a number of provisions of the Vehicle Code. See Cal.Veh.Code § 21055. For example, these vehicles may exceed the speed limit or go through red traffic lights in emergency situations. Id.

fornia law, authorized emergency vehicles can have emergency light bars affixed to their roofs and can operate those lights while performing emergency services. Such vehicles are exempt from certain traffic safety regulations when responding to an emergency. Plaintiffs argue that the Cabazon Public Safety Department vehicles should be treated like those of other law enforcement agencies operating in California, such as the Bureau of Indian Affairs. In the alternative, should the Court find that California regulation of the Tribe's police vehicles is not preempted, plaintiffs assert, as a fall-back position, that the Department should at least be allowed to operate emergency light bars when traveling off the reservation in emergency situations while observing other normal Vehicle Code regulations. As a further fall-back position, in the event the Court finds against plaintiffs on this alternative claim, plaintiffs contend that, at minimum, this Court should determine that Cabazon police vehicles are exempt from the Vehicle Code prohibition against having emergency light bars, so that the Tribe's police officers are not required to cover those light bars upon exiting the reservation.

## III.  *Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Here, the parties have agreed that the issues to be decided present questions of law which are suitable for disposition by summary judgment on the record before the Court.

## IV.  *Discussion*

### A.  *Arguments of the Parties*

California Vehicle Code § 165 defines the term "authorized emergency vehicles" as used in the Code.[6] The list of such vehicles includes public and privately-owned ambulances, forestry and fire department vehicles, vehicles owned by the state or bridge and highway districts, and vehicles owned and operated by any department or agency of the United States government. Section 165(f) also provides that a permit to operate an authorized emergency vehicle may be issued

---

**6.**  References herein to the "Code" or "Vehicle  Code" are to the California Vehicle Code.

by the Commissioner of the California Highway Patrol. The Cabazon Public Safety Department police vehicles do not fit within any category of "authorized emergency vehicles" as that term is used in the Vehicle Code.

The Vehicle Code also provides that only specified vehicles may be equipped with light bars. Cal.Veh.Code, § 27606. Section 27607 permits light bars on vehicles operated by persons licensed in California as private investigators, private security companies, and alarm companies. *Id.* at § 27607. Because the Cabazon Public Safety Department vehicles are not so licensed, its officers are precluded by the Code from operating or displaying emergency light bars on public highways off the reservation.

Plaintiffs argue that insofar as these statutes would preclude the Tribe from operating its marked police vehicles as "authorized emergency vehicles" off the reservation, these laws are preempted. Plaintiffs contend that current federal Indian policy seeks to promote tribal self-government. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 216–17, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (primary goals of federal Indian policy are strengthening tribal governments and encouraging tribal self-sufficiency). Plaintiffs point to other examples of this federal policy, including efforts by the Bureau of Indian Affairs and Department of Justice to encourage and promote tribal law enforcement programs, and legislation providing for greater cooperation between the Secretary of the Interior and tribal law enforcement agencies. *See, e.g.,* Indian Law Enforcement Reform Act, 25 U.S.C. § 2801. Plaintiffs also note that the Cabazon Public Safety Department receives funding from the Bureau of Indian Affairs and the Department of Justice, and that Cabazon Band police officers receive training from the Department of the Interior's Law Enforcement Academy. Plaintiffs contend that the combined effect of these federal policies encouraging tribal sovereignty and law enforcement efforts supports a finding that state regula-

tion of the operation of Cabazon Public Safety Department vehicles in the course of performing law enforcement functions related to enforcing the law on the reservation is preempted.

Plaintiffs argue that state regulation of tribal law enforcement vehicles unlawfully infringes on the Tribe's inherent right to self-government by unduly interfering with the Tribe's law enforcement authority. Plaintiffs contend that tribal sovereignty is not limited by the geographical boundaries of the reservation. They point to a recent Supreme Court decision which found that the doctrine of tribal sovereign immunity applies to actions of tribal members taking place outside the reservation. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Plaintiffs also rely on a Ninth Circuit decision holding that the State of Washington was required to recognize the validity of a tribe's vehicle licensing and registration of tribal governmental vehicles operated both inside and outside the reservation. *Queets Band of Indians v. Washington,* 765 F.2d 1399 (9th Cir.1985).[7] The Ninth Circuit held that the application of state licensing requirements unduly interfered with tribe's ability to carry out governmental functions. *Id.* at 1408.

Plaintiffs also point to the fact that state and local agencies extend reciprocity to other emergency vehicles operated by the Cabazon Band. Plaintiffs point to a recent "Automatic Aid" agreement between Riverside County and the Cabazon Band which allows for exemptions in emergency situations for fire and rescue equipment operated by the Cabazon Public Safety Department to be operated off the reservation.[8] Plaintiffs claim that this agreement demonstrates the weakness of defendants' claims that the operation of Cabazon Public Safety Department police vehicles outside the reservation constitutes a potential threat to public safety.

---

7. This decision was vacated by the Court of Appeals at the request of the parties pending legislation that would render the controversy moot. *Queets Band of Indians v. Washington,* 783 F.2d 154 (9th Cir.1986).

8. The Cabazon Public Safety Department consists of two divisions: a Law Enforcement Division and a Fire Department Division. Declaration of Paul D. Hare, ¶ 2. The controversy in this case concerns vehicles operated by the Department's Law Enforcement Division.

Defendants note that California law clearly applies to tribal police vehicles operating off tribal lands. While defendants are willing to allow marked Cabazon Public Safety Department police vehicles to travel across non-reservation lands in order to reach different sections of the reservation, they argue that these vehicles should not be deemed to be "authorized emergency vehicles" exempt from various provisions of the Vehicle Code requirements. Finally, defendants claim that California has a strong interest in determining which vehicles should be considered to be emergency vehicles which are exempt from general safety laws.

### B. Analysis

In dealing with issues involving Indian affairs, "there is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Two independent barriers may bar the assertion of state regulatory laws over tribal authority. *Id.* at 143, 100 S.Ct. 2578. First, federal laws or policies may specifically preempt the exercise of state law. A broad preemption of state laws may be necessary to protect tribal sovereignty. *Id.* Second, state law may "unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.' " *Id.* (citations omitted).

Plaintiffs do not claim that a specific federal law expressly provides for the preemption of the Vehicle Code provisions in this case. Plaintiffs instead point to a number of federal laws that demonstrate a general federal policy of promoting tribal self-sufficiency and encouraging tribal law enforcement efforts.

The determination of whether federal law preempts state authority does not depend "on mechanical or absolute conceptions of state or tribal sovereignty, but calls for a particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Id.* at 145, 100 S.Ct. 2578. "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests at stake are sufficient to justify the assertion of State authority." *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (citations omitted). State law is more likely to be preempted if it clearly interferes with or disrupts tribal authority. *Id.* at 338–339, 103 S.Ct. 2378 (finding that state regulation of hunting and fishing by non-Indians on reservation land would "supplant tribal regulations" and "disturb and disarrange the comprehensive scheme of federal and tribal management").

Plaintiffs assert that the inability of the Tribe's police officers to have and operate emergency light bars on their vehicles while traveling off-reservation unduly interferes with plaintiffs' efforts to carry out the Cabazon Band's law enforcement activities. Director Hare claims that the emergency light bars are important for the safety of Cabazon Public Safety Department officers. He states that "[e]mergency lights play an important role both in safely responding to emergency situations and from a community relations standpoint in confirming the officers' status as law enforcement officials with those individuals that the officers come in contact with on a day-to-day basis." Third Declaration of Paul Hare, ¶ 15. Hare also states that a covered light bar may confuse the public and signify that the vehicle is out of official service. *Id.* ¶ 14. Finally, Hare points to the practical problems involved in covering the light bars. He claims that the time necessary for officers to stop and cover the light bars impedes their ability to respond to emergencies on other sections of the reservation. *Id.* Plaintiffs argue that the inconvenience and possible dangers caused by requiring the light bars to be covered impairs the Tribe's efforts to carry out law enforcement functions, and therefore is contrary to the federal and tribal interests and policies that support the Tribe's ability to do so.

The State of California, however, has enacted regulatory laws specifically designed to limit and regulate those vehicles allowed to have and operate emergency lights. Defendants maintain that these state regulatory laws reflect important public safety interests,

and are necessary to prevent confusion by the public. Defendants also point to the state interest in regulating those persons authorized to operate emergency vehicles, and emphasize that the state may have no authority over the qualifications of Cabazon Public Safety Department police officers. The California Vehicle Code also contains a provision allowing the Commissioner of the California Highway Patrol to permit otherwise unauthorized vehicles to operate as emergency vehicles. Cal.Veh.Code § 165(f). Plaintiffs have apparently not attempted to obtain a permit from the Commissioner.

In the present case, the enforcement of the Vehicle Code has not been shown by plaintiffs to have significantly interfered with federal policies promoting tribal law enforcement activities. Indeed, although the Tribe has removed emergency light bars from all of the police vehicles in question, there has been no showing of any actual detriment to any of the Tribe's law enforcement activities.[9] The state interests in regulating the operation of emergency vehicles are sufficient to overcome whatever interference with tribal enforcement efforts has been caused by precluding the use of light bars. The general federal policy of supporting tribal law enforcement efforts does not preempt valid state regulation of off-reservation activities in this situation.

"The self-government doctrine is an independent barrier to state regulation." *Crow Tribe v. Montana*, 650 F.2d 1104, 1110 (9th Cir.1981). This doctrine may prohibit states from interfering with the ability of tribes to exercise traditional governmental functions, including tribal law enforcement. *Id.* Under this theory, the court must analyze the respective interests of the parties to determine if the tribal interests are sufficiently "preemptive" to prevent the state from applying generally applicable laws. *See Queets*, 765 F.2d at 1407.

However, this alternative doctrine does not preclude the application of state laws in the present case. As described above, the tribal interests in this case concern the ability of the Cabazon Band to carry out its on-reservation law enforcement activities in an effective manner. This Court has determined that P.L. 280 does not bar plaintiffs from establishing a tribal police department, with concurrent jurisdiction to engage in certain law enforcement activities on the reservation.

However, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–149, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). The extent of tribal sovereignty, however, clearly involves more than simple geographic limits, but includes the "tradition of Indian sovereignty over the reservation and tribal members." *White Mountain*, 448 U.S. at 143, 100 S.Ct. 2578. Certain aspects of tribal sovereignty, such as tribal immunity from suit, have been held to be so fundamental as to preempt the enforcement in court of state laws regardless of where the activity takes place. *See Kiowa Tribe*, 118 S.Ct. at 1703. However, the application of state laws in the present case has not been shown to prevent plaintiffs from effectively enforcing tribal laws on the reservation. Here, in light of the absence of any showing that the operation of police vehicles without light bars has interfered with the Tribe's law enforcement activities, the requirement that Cabazon Public Safety Department police vehicles cover their light bars when leaving the reservation does not constitute a substantial imposition on plaintiffs' right to self-government and tribal law enforcement.

At bottom, the question presented by this motion is whether general, non-discriminatory Vehicle Code regulations governing the operation of vehicles on public highways not located in Indian Country creates an undue or excessive burden on the Tribe's

9. The Ninth Circuit's vacated decision in *Queets Band of Indians*, 765 F.2d at 1409, while not binding, is instructive on this point. There, the application of state vehicle licensing laws would have rendered the tribe's licensing authority to be "ineffective" and "of little value." *Id.* (quoting the Minnesota Supreme Court's decision in *Red Lake Band of Chippewa Indians v. Minnesota*, 311 Minn. 241, 248 N.W.2d 722, 727 (1976)). No similar contention is made here.

ability effectively to operate its own police department. The question involves consideration of the nature and extent of the burden measured against the interests of the state in enforcing its laws.

The County of Riverside states that it "does *not* prevent tribal police units from traveling on a public highway from one portion of the reservation to another, so long as the emergency light bars are covered and thus cannot be used." Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment, dated October 2, 1998, at 2 (emphasis in the original). The County's position is in apparent recognition of the fact that preventing the Tribe's marked police vehicles from traveling on non-Indian lands to reach different portions of the reservation might so directly interfere with the Tribe's law enforcement functions as to impermissibly conflict with the Tribe's rightful authority to enforce the criminal law on the reservation.[10]

However, on the record before the Court, the court cannot find that requiring the Tribe's police vehicles to refrain from displaying uncovered emergency light bars and to otherwise obey the Vehicle Code when traveling outside the reservation constitutes an undue or excessive burden on the Tribe's ability to perform effectively its on-reservation law enforcement functions.

Plaintiffs' motion for summary judgment on the second and third claims for declaratory and injunctive relief is hereby denied, and judgment thereon is to be entered in favor of defendants on the second and third claims for relief.

---

**10.** In light of the County's position, the court     need not decide this issue.