**CABAZON BAND OF MISSION INDIANS, et al.**

v.

**Larry D. SMITH, et al.**

**No. CV–97–4687 CAS(JGx).**

United States District Court,
C.D. California.

April 29, 1998.

CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

SNYDER, District Judge.

This case involves a dispute between the Cabazon Band of Mission Indians, a federally recognized Indian tribe, and the Sheriff and County of Riverside, California. Plaintiffs, the Cabazon Band of Mission Indians and Paul D. Hare, in his capacity as Director, Cabazon Public Safety Department, and defendants Larry D. Smith, individually and as Sheriff of Riverside County, Ronald F. Dye, individually and as Captain of the Riverside County Sheriff's Department Indio Station and the County of Riverside have filed cross motions for partial summary judgment as to plaintiffs' first claim for relief which seeks a declaratory judgment.[1] The issue presented

---

**13.** *See* Part II.A.1, *supra.*

**1.** The parties have filed a stipulation of facts with respect to their cross motions for partial summary judgment. Specifically, the parties have stipulated to the following facts:

1. Plaintiff Cabazon Band of Mission Indians is a federally recognized Indian tribe with a governing body recognized by the United States Department of the Interior.

2. Defendant Larry D. Smith is the Sheriff of Riverside County, California. As Sheriff,

by the parties on these cross motions is whether Public Law 83–280 (herein referred to as "P.L. 280"), enacted by Congress in 1953 and codified at 18 U.S.C. § 1162, divested the Cabazon Band of the authority to maintain a tribal police force for the purpose of enforcing its internal tribal criminal laws against members of the tribe, as well as detaining non-members of the tribe for the offenses committed on the reservation in order to turn them over to state or local law enforcement officials for prosecution.[2] For the reasons set forth below, the Court grants plaintiffs' cross motion for partial summary judgment and denies defendants' cross motion for summary judgment.

### ARGUMENTS OF THE PARTIES

The defendants contend that P.L. 280 completely divested the Cabazon Band of any authority to establish and operate a police force on the reservation, and that all law enforcement authority (other than that belonging to ordinary residents of the State of California) is within the exclusive province of California-recognized peace officers. Plaintiffs contend to the contrary, arguing that P.L. 280 did not divest the Cabazon Band of its inherent criminal law jurisdiction and that the County and the Cabazon Band have concurrent law enforcement jurisdiction.

Plaintiffs assert that it is a fundamental principle of federal Indian law, that absent express congressional authorization, state laws do not apply on Indian reservations. *See Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 561, 8 L.Ed. 483 (1832); *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). They further argue that prior to the enactment of P.L. 280, state and local police agencies had no law enforcement authority on

defendant Smith directs and commands the activities of all members of the Riverside County Sheriff's Department.

3. Defendant Ronald F. Dye is the Captain, Indio Station, within the Riverside County Sheriff's Department.

4. Defendant County of Riverside is a political subdivision of the State of California.

5. The Cabazon has created, organized, staffed and equipped the Cabazon Public Safety Department as an agency of the Band. This case raises questions concerning the authority of the Cabazon Band to create the Public Safety Department and the scope of law enforcement authority exercised by the officers of the Cabazon Public Safety Department.

6. Plaintiff Cabazon Band has maintained and continues to maintain that P.L. 280 transferred only the federal government's law enforcement responsibility to the State of California. The Cabazon Band further maintains that P.L. 280 did not in any way limit, modify or diminish the Tribe's pre-existing concurrent criminal jurisdiction over Indians on the Cabazon Indian Reservation or its inherent sovereign authority to maintain public health, safety and welfare through the operation of a Tribal Public Safety Department. The Cabazon Band further maintains that the operation of the Cabazon Public Safety Department, including the status and authority of its Officers, is determined by federal and tribal law, and not under state law.

7. Defendants Sheriff Smith, Captain Dye and the County of Riverside have maintained, and continue to maintain, that the grant of criminal jurisdiction to the State under P.L. 280 was exclusive, and that under P.L. 280 the Cabazon Band has been deprived of its authority to exercise law enforcement functions on the Reservation. The defendants further maintain that under P.L. 280 and California law the Tribe has no authority to operate a tribal Public Safety Department within the Reservation to enforce its civil and criminal laws.

2. The Cabazon Band has created a tribal Public Safety Department to provide civil and criminal law enforcement services on the Cabazon reservation. The Cabazon Public Safety Department currently enforces federal, state and tribal law on the reservation with respect to both tribal members and non-members. The Department currently has fourteen officers and eight civilian employees. The officers are armed and patrol the reservation in marked police vehicles. Defendants assert that the Cabazon Band has not been recognized as a police agency and that the Commission on Police Officer Standards and Training ("POST") has denied peace officer status to the Cabazon Band Department of Public Safety. Plaintiffs assert that the officers all have prior law enforcement experience and certification under POST requirments. In addition, all of the officers have completed federal law enforcement training offered by the Department of the Interior. During the last fiscal year, the Public Safety Department responded to over 1500 requests for service, issued over 400 citations and took over 100 individuals into custody. During that same period, the Cabazon Band spent over $900,000 to finance the law enforcement activities of the tribal Public Safety Department. In addition, the tribe's Public Safety Department received certain funding from the Bureau of Indian Affairs and the United States Department of Justice.

Indian reservations within the State of California. Rather, responsibility for criminal law enforcement resided with the tribes and the federal government, which exercised criminal jurisdiction primarily under the Assimilative Crimes Act, 18 U.S.C. §§ 13 and 1152, and the Major Crimes Act, 18 U.S.C. § 1153. By enacting P.L. 280 in 1953, Congress mandated the transfer of civil and criminal jurisdiction over Indian country from the federal government to the governments of five designated states, including California.[3]

Plaintiffs argue that P.L. 280 does not expressly provide that the designated states' criminal law jurisdiction is exclusive as against the Indian tribes located in those states, and provide four reasons why this Court should find that the state law jurisdiction is not exclusive. First, plaintiffs argue that persuasive authority holds that P.L. 280 was not intended to deprive Indian tribes of concurrent law enforcement authority on the reservation. Plaintiffs point to a 1978 Opinion of the Solicitor of the United States Department of the Interior where the Solicitor concluded that "an Indian tribe may exercise criminal jurisdiction over its members concurrently with a state that has assumed jurisdiction over the tribe's reservation pursuant to [P.L. 280]." Second, plaintiffs note that several federal and state courts that have addressed the same question concluded that P.L. 280 did not divest the tribes of preexisting jurisdiction. *Native Village of Venetie I.R.A. Council v. State of Alaska,* 944 F.2d 548, 559–62 (9th Cir.1991), *cert. granted on other grounds,* 521 U.S. 1103, 117 S.Ct. 2478, 138· L.Ed.2d 987 (1997); *Walker v. Rushing,* 898 F.2d 672 (8th Cir.1990); *State of Washington v. Greathouse,* No. 90–1–00644–4 (Superior Court for Kitsap County, June 24, 1991); *Confederated Tribes of Colville Reservation v. Beck,* No. C–78–76 (E.D.Wash. Dec. 21, 1978), 6 Ind.Law Rep. F–8 (1979).[4] Third, plaintiffs argue that defendants' position "cannot be squared with the realities of law enforcement on the reservation," noting that the Cabazon Band has adopted a body of tribal law codified in the Code of the Cabazon Band of Mission Indians which regulates public health and safety matters, hunting and the use of firearms, gaming activities and traffic and motor vehicle usage on reservation roads, which are all matters within the Cabazon Band's authority to regulate by tribal law.[5] The Cabazon Band argues that it would be inconsistent with the basic concept of the tribe as sovereign to deny it the authority to enforce the laws it has the power to enact. Finally, plaintiffs assert that their interpretation of P.L. 280 is also supported by unique canons of construction applicable to legislation affecting Indian tribes. Plaintiffs cite a number of Supreme Court cases [6] for the proposition that when Congress seeks to diminish tribal rights, such intention must clearly be expressed.[7] The Cabazon Band argues that because Congress did not expressly and unequivocally declare its intention in P.L. 280 to extinguish tribal law enforcement powers, the statute may not be interpreted to abro-

3. Plaintiffs do not dispute that Congress' primary motivation in enacting P.L. 280 was to combat lawlessness on Indian reservations. *See Bryan v. Itasca County,* 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976). *See also* S.Rep. No. 699, 83d Cong., 1st Sess., *reprinted in* 1953 U.S.Code Cong. & Admin.News 2409, 2412.

4. Commentators have for the most part agreed with this construction. *See* Carole Goldberg–Ambrose, *Public Law 280 and the Problem of Lawlessness in California Indian Country,* 44 UCLAL.Rev. 1405, 1415 (1997) (In P.L. 280 designated states, tribal criminal jurisdiction exists over Indians for offenses committed in Indian Country, subject to the limits on punishment set forth in the Indian Civil Rights Act).

5. A copy of the Cabazon Tribal Code is attached as an exhibit to the Affidavit of Glenn M. Feldman, filed February 5, 1998.

6. *Williams v. Lee,* 358 U.S. 217, 221, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Menominee Tribe v. United States,* 391 U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Washington v. Washington State Fishing Ass'n,* 443 U.S. 658, 690, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979).

7. A leading treatise on Indian law states that among the canons of construction of statutes affecting Indian rights is the rule that Congress's intent to abrogate Indian rights must be indicated by a "clear and plain statement." Felix S. Cohen, *Felix S. Cohen's Handbook of Federal Indian Law,* 224 (1982 ed.)

gate the preexisting law enforcement authority of Indian tribes.

Defendants argue to the contrary, contending that in enacting P.L. 280, Congress granted the designated states exclusive law enforcement authority with respect to crimes occurring in Indian country in California and the other designated states, subject only to a narrow exception allowing tribal enforcement of regulations governing hunting, trapping and fishing on reservation lands. Defendants argue that their interpretation of the statute reflects the plain and unambiguous meaning of P.L. 280.[8] Defendants contend that their interpretation is bolstered by the legislative history of P.L. 280, which makes it clear that that statute was enacted to address a perceived problem with respect to lawlessness on Indian reservations. *Bryan v. Itasca County,* 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710, (1976). According to defendants, P.L. 280 was designed to extend state criminal jurisdiction over crimes committed by or against Indians on reservation land to areas where tribal law enforcement was inadequate or nonexistent. Defendants base this conclusion on the following arguments:

First, defendants argue the statute clearly states that the "criminal laws of [California] shall have the same force and effect within such Indian country as they have elsewhere within the state or territory. . . ." 18 U.S.C. § 1162(a). Defendants argue that if Congress had wanted Indian tribes within the designated states to retain law enforcement authority it would not have provided that

state statutes must be given the same effect within Indian country as elsewhere within those states. Defendants point in particular to the fact that the California Penal Code limits the ability of persons who have not been designated by California law to be peace officers to perform law enforcement functions, and sets forth specific requirements and limitations regarding the authority of peace officers and residents to effectuate an arrest, to carry firearms and to use of force in the apprehension of individuals suspected of committing a crime.

Second, defendants argue that the savings clause of subsection (b) of § 1162 makes clear that Congress only saw fit to preserve the rights of Indian tribes to regulate hunting, trapping or fishing on reservation land, thus demonstrating that Congress did not intend to preserve any rights Indian tribes had with respect to the criminal matters which are the subject of subsection (a). Finally, defendants assert that subsection (c) of § 1162, which provides that "sections 1152 and 1153 of this chapter shall not be applicable within the areas of Indian country listed in subsection (a) of the section as areas over which the several states have *exclusive* jurisdiction, establishes that the states shall have the sole authority to promulgate and enforce criminal law in those states." Defendants argue that if Congress contemplated that the designated states would have concurrent criminal law jurisdiction with any other sovereign, including Indian tribes, it would not have used the term "exclusive" in subsection (c).[9]

---

**8.** The statute in question, however, does not explicitly mention tribal law or declare that the Indian tribes shall have no law enforcement authority. As noted in a recent commentary on this statute, although P.L. 280 substituted state for federal legal authority in all the designated reservations, "[n]o mention was made of tribal authority." Carole Ambrose–Goldberg, *Public Law 280 and the Problem of Lawlessness in California Indian Country,* 44 UCLAL.Rev. 1405, 1416 (1997).

**9.** Defendants' argument in this regard is not without support. In their dissenting opinion in *California v. Cabazon Band of Mission Indians,* 480 U.S. at 222, 107 S.Ct. 1083, Justice Stevens, joined by Justices O'Conner and Scalia, stated "the plain language of P.L. 280, 67 stat. 588, as amended, 18 U.S.C. § 1162 . . . authorizes California to enforce its prohibition against commer-

cial gambling on Indian reservations." Defendants also argue that the language employed by Congress when it amended P.L. 280 and extended it to Indian country in Alaska supports its plain meaning argument, in that Congress found it necessary to specifically confer concurrent jurisdiction over criminal matters to the Metlakatla Indian community, because absent such measure, the State of Alaska would have had exclusive criminal jurisdiction. Defendants argue that this provision in the amendment to P.L. 280 would have been unnecessary if the tribe had preexisting concurrent criminal jurisdiction. Plaintiffs counter by arguing that this amendment was adopted to resolve a problem unique to Alaska as to the status of Indian country in that state. In fact, the Supreme Court very recently ruled that in enacting the Alaskan Native Claims Settlement Act in 1971, Congress abrogated whatever Indian country status existed for lands

## DISCUSSION

The present lawsuit appears in certain respects to be a sequel to the dispute that gave rise to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). Plaintiffs assert that the Cabazon Band has the inherent authority to operate a tribal law enforcement agency with the power to enforce tribal criminal law against Indians on its reservation and to arrest Indians and non-Indians alike for suspected offenses committed on the reservation for the purpose of transporting them to California police agencies in cases where the tribe lacks the jurisdiction (or ability) to try and punish such offenses. The County argues that the Cabazon Band has no authority whatsoever to perform law enforcement functions because those functions can only be performed by peace officers who qualify as such under the law of the State of California.

For the reasons stated herein, the Court does not find the defendants' argument to be persuasive. The defendants' argument that P.L. 280 should be read as divesting the Indian tribes in this state of their inherent criminal jurisdiction is contradicted by controlling case law. The Ninth Circuit has directly held that "Public Law 280 was designed not to supplant tribal institutions, but to supplement them." *Native Village of Venetie I.R.A. Council v. Alaska, supra,* 944 F.2d at 560. The Ninth Circuit has declared: "The Supreme Court has also adopted the view that Public Law 280 is not a divestiture statute." *Id.*

The Ninth Circuit has also sustained the right of tribes to maintain tribal police forces to aid in the enforcement of tribal law. *Ortiz–Barraza*, 512 F.2d at 1179. In addition to the power to exclude trespassers from tribal lands, the Supreme Court made clear that tribal law enforcement authorities have the power to restrain persons who breach the peace on the reservations, and that "[w]here jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities." *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 2066, 109 L.Ed.2d 693 (1990); *see also Quechan Tribe v. Rowe,* 531 F.2d 408 (9th Cir. 1976).[10]

It is well settled that tribes may also exclude persons from the reservation who violate tribal or other applicable laws. *Merrion v.. Jicarilla Apache Tribe,* 455 U.S. 130, 144, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); *Ortiz–Barraza v. United States,* 512 F.2d 1176, 1179 (9th Cir.1975). Although tribal courts may not exercise criminal jurisdiction over non-Indians, Indian tribes may assert criminal jurisdiction over Indians on reservations. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

The Eighth Circuit has also rejected the notion that P.L. 280 divested the tribes of their inherent law enforcement jurisdiction. In *Walker v. Rushing,* 898 F.2d 672 (8th Cir.1990), an Indian who was to be prosecuted by her tribe after she struck and killed two other tribe members with her vehicle brought a petition for writ of habeas corpus. The court granted the writ, holding that the Major Crimes Act did not divest the tribe of criminal jurisdiction over motor vehicle of-

---

whose ownership was transferred to two Native American corporations. *Alaska v. Native Village of Venetie Tribal Government,* 522 U.S. 520, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998).

Plaintiffs also point out that it is somewhat treacherous to use subsequent legislative history to divine Congress's intent in enacting prior legislation. *See, e.g., Southeastern Community College v. Davis,* 442 U.S. 397, 411, n. 11, 99 S.Ct. 2361, 2370, n. 11, 60 L.Ed.2d 980 (1979); *Brock v. Writers Guild,* 762 F.2d 1349, 1356 (9th Cir. 1985).

Finally, plaintiffs argue that the 1970 amendment actually supports plaintiffs' interpretation of the statute because Congress merely confirmed the preexisting concurrent criminal law jurisdiction that the Metlakalana had over the Annette Island Reserve and did not by implication divest Indian tribes in other designated states of their rights to promulgate and enforce tribal criminal law.

**10.** In 1990 and 1992, in response to the Supreme Court's decision in *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), which held that a tribe's criminal jurisdiction did not extend to non-members of that tribe, Congress enacted legislation that recognized that tribal criminal jurisdiction could be extended to all Indians on the reservation. Act of November 5, 1990, P.L. 101–511, § 8077(b) and (d), 104 Stat. 1856, 1892; Act of October 9, 1991, P.L. 102–124, 105 Stat. 616; Act of October 28, 1991, P.L. 102–137, 105 Stat. 646.

fenses in Indian Country, and that P.L. 280 did not divest Indian tribes of their sovereign power to punish their own members for violations of tribal criminal law. The Court of Appeals declared:

"An Indian tribe's power to punish members who commit crimes within Indian country is a fundamental attribute of the tribe's sovereignty. *United States v. Wheeler*, 435 U.S. 313, 326–27, 98 S.Ct. 1079, 1087–88, 55 L.Ed.2d 303 (1978); *Talton v. Mayes*, 163 U.S. 376, 379–80, 16 S.Ct. 986, 987–88, 41 L.Ed. 196 (1896). Unlike certain other aspects of tribal sovereignty, this power was not 'implicitly lost by virtue of [the tribe's] dependent status.' *Wheeler* 435 U.S. at 326, 98 S.Ct. at 1087. This power may be limited only by a treaty or federal statute. *Id.* at 323, 98 S.Ct. at 1086; *United States v. Quiver*, 241 U.S. 602, 605–06, 36 S.Ct. 699, 700–01, 60 L.Ed. 1196 (1916)."

\*     \*     \*     \*     \*     \*

"[W]e agree with the district court's conclusion that Public Law 280 did not itself divest Indian tribes of their sovereign power to punish their own members for violations of tribal law. Nothing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority. F. Cohen, *Cohen's Handbook of Federal Indian Law* 344. As both the Supreme Court and this court have made clear, limitations on an Indian tribe's power to punish its own members must be clearly set forth by Congress. *Quiver*, 241 U.S. at 606, 36 S.Ct. at 700; *Greywater v. Joshua*, 846 F.2d 486, 489 (8th Cir.1988); *see also White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665 (1980) (ambiguities in federal law are generously construed in favor of tribal sovereignty). We find no such clear expression of congressional intent in Public Law 280."

898 F.2d at 674–75.

In light of the foregoing authorities, the Court must reject defendants' argument that

P.L. 280 should be read as divesting the Cabazon Band of its inherent authority to establish a police force with jurisdiction to enforce tribal criminal law against Indians and to detain and turn over to state or local authorities non-Indians who commit suspected offenses on the reservation.

The resolution of this relatively narrow question does not, however, resolve the more subtle issue of whether the California Penal Code applies, in whole or in part, to establish the qualifications of persons who may act as tribal police officers. The answer to this question may directly bear on the ability of the Cabazon Band to establish a police force or the nature of the force that may be established.

Defendants argue that section 164 of the California Penal Code is being violated by the Cabazon Band's police officers because they lack authority to arrest or detain any persons in their purported capacity as tribal police officers. This argument, to the extent that it is based on the notion that P.L. 280 divests the Cabazon Band of any authority to maintain a police force, is rejected.

However, California Penal Code §§ 830–832.9 set forth detailed provisions regarding the training, qualification and authority of peace officers to act as law enforcement officers within the meaning of the Code. Assuming that tribal police officers are not California peace officers within the meaning of the California Penal Code, there remains the question whether tribal police are nonetheless subject to the provisions of California criminal law that regulate, among other things, the training required to become peace officers and the manner in which they must carry on their law enforcement responsibilities.[11]

The answer to this question may depend on whether the California Penal Code sections governing the qualification and conduct of peace officers are "criminal/prohibitary" statutes or "civil/regulatory" statutes as de-

---

11. The Court notes that by § 830.8(e) of the California Penal Code, California has recognized that the Washoe Tribe of Nevada and California may appoint "qualified" persons to become Washoe tribal police officers who may enforce Washoe tribal criminal laws against Indians, but such tribal police do not have the status of California's peace officers. This provision appears to recognize the possibility that tribal police may exist concurrently with the police agencies established under California law.

fined by the Supreme Court in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244. However, because the parties have not briefed this question, the Court directs the parties to submit supplemental briefs in accordance with a schedule to be determined at the May 11, 1998, mandatory status conference herein.