## CABAZON BAND OF MISSION INDIANS; Paul D. Hare, Plaintiffs–Appellants,

v.

## Larry D. SMITH, individually and in his capacity as Sheriff of Riverside County; Ronald F. Dye, individually and in his capacity as Captain, Indio Station, Riverside County Sheriff's Department; County of Riverside, Defendants–Appellants.

No. 02–56943.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Filed Nov. 3, 2004.

---

Glenn M. Feldman, Mariscal, Weeks, McIntyre & Friedlander, Phoenix, AZ, for the plaintiffs-appellants.

Michael A. Bell, Bell, Orrock & Watase, Los Angeles, CA, and Timothy T. Coates, Greines, Martin, Stein & Richland, Los Angeles, CA, for the defendants-appellees.

Before: PREGERSON, COWEN,* and WILLIAM A. FLETCHER, Circuit Judges.

PREGERSON, Circuit Judge.

The Cabazon Band of Mission Indians ("Tribe") appeals the district court's order granting summary judgment to the County of Riverside ("County") and its Sheriff Larry Smith ("Sheriff") (collectively, "Defendants"). Through its suit, the Tribe seeks a determination that vehicles operated by its Public Safety Department are "authorized emergency vehicles" permitted to use and display emergency light bars while traveling on public roads between the noncontiguous portions of the Tribe's reservation. Before the Tribe's suit, Defendants repeatedly stopped and cited the Tribe's police officers for violating California's Vehicle Code whenever the officers traveled on nonreservation roads to respond to emergency calls from different portions of the reservation. The Tribe argues that prohibiting its emergency ve-

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

hicles from displaying emergency light bars creates an undue burden on its ability to effectively perform on-reservation law enforcement functions. Because we conclude that applying the light bar prohibition to the Tribe's police vehicles is discriminatory, we reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Tribe is a federally recognized Indian tribe located in Riverside County, California. The Tribe operates a Public Safety Department with seventeen officers who provide civil and criminal law enforcement services on its reservation lands. The reservation comprises four noncontiguous sections of land, with approximately thirteen miles of off-reservation roads linking the most distant sections. Because of this separation, it is not possible to drive between the different sections without leaving reservation land and driving on public roads. Consequently, the Tribe's police officers must drive across sections of public highways on nonreservation land in the County of Riverside in order to provide law enforcement services to the entire reservation.

Uniformed and armed tribal police officers patrol the reservation in marked tribal police vehicles. The Tribe's Public Safety Department receives federal funding and its officers receive mandatory federal law enforcement training. The vehicles bear U.S. government licenses issued by the Bureau of Indian Affairs ("BIA") and are marked on the sides and rear with the words "Tribal Law Enforcement" and on the sides with "Cabazon." In the past, the vehicles were also equipped with emergency light bars on their roofs. However, because the Tribe's police officers were repeatedly stopped and cited by local law enforcement for violations of the California Vehicle Code when driving on nonreservation lands, the Tribe removed the light bars.

The California Vehicle Code ("Vehicle Code") limits the display or use of emergency light bars to "authorized emergency vehicles" performing emergency services. *See* Cal. Veh.Code §§ 25251(a)(4), 25252, 25258, 25259, 27606. Prior to commencement of this suit, the County of Riverside Sheriff's Department repeatedly stopped the Tribe's police officers' vehicles on public highways between the sections of the Tribe's reservation. The Tribe's officers were cited for displaying emergency light bars in violation of the Vehicle Code because the tribal police vehicles were not designated "authorized emergency vehicles" within the meaning of Vehicle Code section 165.

To avoid repeated stops and arrests, Chief Paul D. Hare, the Tribe's Director of Public Safety, instructed his officers to place canvas covers over their vehicles' light bars when they left the reservation. As a result, an officer responding to an emergency call had to stop before leaving the reservation, get the covers out of the vehicle's trunk, attach the covers over the vehicle's light bars, and then continue on the emergency call. According to Chief Hare, the efforts to cover the lights proved to be unworkable and hazardous, delaying response time by several minutes and creating a "serious officer safety issue." Consequently, Chief Hare ordered the light bars removed from the vehicles to avoid further stops and the resulting delays. Chief Hare maintains that operating the vehicles without the light bars or with covered light bars creates a continuing danger to the safety of his officers and compromises their ability to perform their

duties.[1] Further, operating the vehicles without the light bars conflicts with BIA requirements that the Tribe's police officers display such light bars when acting in their law enforcement capacity.[2]

In June 1997, the Tribe filed suit seeking to enjoin the County and Sheriff from stopping and arresting its police officers when they traveled across nonreservation lands in tribal police vehicles on official business. The Tribe also sought a declaration that its police vehicles could be equipped with uncovered emergency light bars while traveling on public roads between the noncontiguous sections of its reservation.[3]

The district court denied the Tribe's summary judgment motion, finding that prohibiting the Tribe from using or displaying emergency light bars on public highways not located in Indian country did not create an undue or excessive burden on the Tribe's ability to effectively perform its on-reservation law enforcement functions. *Cabazon Band of Mission Indians v. Smith,* 34 F.Supp.2d 1201 (C.D.Cal.1998) (hereinafter *Cabazon I* ). In reaching this result, the district court applied the bal-

ancing test set out in *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 145, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Because it found that the Vehicle Code did not significantly interfere with the Tribe's law enforcement activities or federal policies promoting those activities, the district court granted summary judgment to Defendants.

In an opinion that was later withdrawn, a divided panel of this court affirmed the denial of the Tribe's summary judgment motion, but on grounds that differed from those relied on by the district court. *Cabazon Band of Mission Indians v. Smith,* 249 F.3d 1101 (9th Cir.) (hereinafter *Cabazon II* ), *vacated,* 271 F.3d 910 (9th Cir. 2001). In the *Cabazon II* majority's view, the County's regulation of the Tribe's use of emergency light bars occurred entirely off reservation and, thus, *White Mountain's* balancing test was inapplicable. Instead, the majority applied the standard articulated in *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). Under *Mescalero,* a nondiscriminatory state law applied to Indian activities outside a tribe's reservation

1. Indeed, enforcement of the light bar prohibition has impacted the tribal police officers' ability to respond to emergency situations. On one occasion, the Sheriff's office stopped and detained an officer for twelve minutes because his vehicle's emergency lights were activated while traveling on nonreservation lands. At the time he was stopped, the officer was responding to a life-threatening emergency in which an individual died. While it cannot be known whether the individual would have lived had help arrived sooner, it is clear that a tribal police officer was prevented from responding to an emergency situation in a prompt manner because of the light bar issue.

2. As things now stand, the only way tribal officers responding to an emergency call in a noncontiguous portion of their reservation can comply with both BIA and Vehicle Code mandates is by engaging in a preposterous

and time-consuming ritual: before leaving the reservation, the officers must stop, exit their vehicle, retrieve the covers from the vehicle's trunk, attach the covers over the light bars, and continue across the public roads until they re-enter reservation lands, where they must again stop their vehicle, exit their vehicle, remove the covers from the light bars, return the covers to their vehicle's trunk, and then activate the lights before continuing on their way to what began as an emergency call. For the tribal citizen awaiting the officers' help, such a delay could be tragic.

3. In addition, the Tribe sought a declaration that it had a right to operate a tribal law enforcement agency on and within its reservation. The Tribe was granted summary judgment on this issue. *Cabazon Band of Mission Indians v. Smith,* 34 F.Supp.2d 1195 (C.D.Cal.1998). No appeal was taken from that judgment.

boundaries is federally preempted only where the state law is contrary to "express federal law." *Id.* at 148–49, 93 S.Ct. 1267. Finding no express law to the contrary, and concluding that it was "undisputed that California's Vehicle Code is nondiscriminatory state law," the *Cabazon II* majority held that the Vehicle Code's limitation on the use and display of emergency light bars to "authorized emergency vehicles," applied to the Tribe's police vehicles traveling on public highways. 249 F.3d at 1105.

On July 18, 2001, while the Tribe's petition for rehearing in *Cabazon II* was pending, the Tribe and the BIA Office of Law Enforcement Services entered into a Deputation Agreement. Pursuant to that agreement, the BIA can issue Special Law Enforcement Commissions ("Commissions") to tribal police officers. The purpose of the agreement is to "provide for efficient, effective, and cooperative law enforcement efforts in and around Indian country in the State of California, and its terms [are to] be interpreted in that spirit." In keeping with its goal, the Deputation Agreement delegates certain federal law enforcement authority to tribal police officers commissioned by the BIA. Deputation of tribal law enforcement officers authorizes them "to assist the BIA in its duties to provide law enforcement services and to make lawful arrests in Indian country" so that "law enforcement officers [are able] to react immediately to observed violations of the law and other emergency situations."

The BIA has established certain minimum standards and certification requirements with which its commissioned officers must comply to obtain and maintain their Commissions. 69 Fed.Reg. 6321–22. To receive Commissions, applicants must be at least 21 years old, must undergo an FBI background check performed by the tribe's chief law enforcement officer; must be full-time employees with a law enforcement program, and must be certified by the BIA or by the State.[4] 69 Fed.Reg. 6322. Commissioned officers are also required to undergo semi-annual firearms certification and must not have any felony convictions. *Id.* An application must include, among other things, proof of the applicant's police training, current firearms qualifications, and a written acknowledgment that the applicant has reviewed and has agreed to comply with the BIA Law Enforcement Services's Code of Conduct. The Commissions expire every three years, after which the officers must reapply to the BIA and the Tribe's chief law enforcement officer must re-certify their qualifications. *Id.*

Since the Tribe entered into the Deputation Agreement, nearly all of its police officers now carry Commissions and, therefore, are commissioned as agents of the federal government. Commissioned officers are granted the same law enforcement authority as officers of the BIA, and tribal police offers carrying Commissions are authorized to enforce "[a]ll Federal criminal laws applicable to Indian country."[5] While exercising any BIA law en-

---

**4.** Applicants must meet respective state Peace Officer Standards and Training requirements for certification as full-time peace officers. For those officers who are not yet certified, the BIA provides training. 69 Fed.Reg. 6322.

**5.** BIA-commissioned officers may be called upon to enforce all federal criminal laws applicable to Indian country, excluding the General Crimes Act, 18 U.S.C. § 1152, and

the Major Crimes Act, 18 U.S.C. § 1153. Commissioned officers are also authorized to enforce all federal statutes applicable within Indian country in the tribe's state. When responding to a call in which there is no reason to suspect a federal offense, tribal officers are instructed to respond in accordance with local and state law, although they still maintain their federal status in certain circumstances.

forcement responsibility in Indian country, commissioned tribal police officers are treated as federal employees under the Federal Tort Claims Act.[6] The Deputation Agreement also requires that the Tribe comply with the BIA's Law Enforcement Handbook of the Office of Law Enforcement Services, which mandates that police vehicles operated by commissioned officers be equipped with emergency light bars.

In light of the Deputation Agreement, the *Cabazon II* panel withdrew its opinion and remanded for the district court to consider the Deputation Agreement's impact on the issues in this case. *Cabazon Band of Mission Indians v. Smith*, 271 F.3d 910 (9th Cir.2001) (hereinafter, *Cabazon III*).

On February 10, 2004, the BIA published internal policies on the authority and obligations of parties to the Deputation Agreement, including BIA-commissioned officers.[7] 69 Fed.Reg. 6321–22. According to the BIA, "[i]t is common for tribes to have difficulty getting local or State law enforcement to respond to crimes [, such as domestic violence, occurring] on the reservations." 69 Fed.Reg. 6321. This difficulty creates "a critical void in law enforcement in Indian country that the[ ] [Commissions] fill." *Id.*

The BIA's February 10 notice highlights the BIA's requirement that its commissioned officers "use certain equipment and drive certain vehicles" for both the officers' and the public's safety. The notice stresses that federally commissioned tribal officers should be able "to respond to calls immediately and with all of the necessary and recommended law enforcement tools." It further specifies that tribal officers "maintain their law enforcement responsibilities and certain authorities irrespective of whether they are located in Indian country." According to the BIA, "the boundaries of Indian country [should] not impede officers' travel, use of marked vehicles, emergency response, and other incidental aspects of their Indian country policing authority." 69 Fed.Reg. 6321.

On July 19, 2004, BIA Law Enforcement Services issued a revised Model Deputation Agreement ("2004 Model Agreement"), which the BIA will use in issuing future Commissions.[8] Under the 2004 Model Agreement, BIA-commissioned tribal police officers are expected to "operate marked police vehicles with light bars." According to BIA Law Enforcement Services, such equipment is necessary for the safety of the officers, and to communicate to the general public and those suspected of criminal activities the officer's status and authority.

The 2004 Model Agreement also recognizes that tribal officers may sometimes be required to leave Indian country to carry out their official duties, and cites as an example the need for officers to respond to

---

Commissioned officers may also respond to observed violations of federal law when located outside of Indian country in a public safety emergency.

6. The BIA, however, has no authority to supervise or control the "day-to-day discharge of duties of officers whom they have commissioned pursuant to this Agreement." Moreover, "nothing in [the] Agreement is intended to impair, limit, or affect the status of any agency or the sovereignty of any government."

7. The notice was issued pursuant to the Indian Law Enforcement Reform Act, 25 U.S.C. §§ 2, 9, 2801 et seq.; 5 U.S.C. §§ 301, 552(a); and 43 U.S.C. § 1457.

8. This new form replaces the Deputation Agreement entered into by the Tribe and the BIA on July 19, 2001. Although the specific provisions refer to BIA officers, the 2004 Model Agreement goes on to note that BIA-commissioned tribal police officers are subject to the same requirements.

an incident in another area of Indian country. Thus, the 2004 Model Agreement specifies that even when traveling outside Indian country commissioned officers maintain their federal law enforcement status and are still required to use marked vehicles equipped with emergency light bars. Accordingly, commissioned officers responding to a call that may involve a federal offense or undertaking any duty that may relate to their federal functions continue to function as BIA officers "irrespective of the boundaries of the Tribe's reservation or the location of Indian country." Moreover, when responding to an emergency that may involve a federal offense, officers must respond in emergency mode and travel to the site of the call as quickly and safely as possible, "irrespective of the boundaries of Indian country."

On May 6, 2002, the Tribe received a letter from the Commissioner of the California Highway Patrol, D.O. Helmick. Helmick's letter takes a position contrary to that of the Defendants. In his letter, Helmick recognizes that "Vehicle Code section 165 would allow [the Tribe's commissioned police] officers to utilize authorized emergency vehicles in the performance of their duties." He further expresses his opinion that it was reasonable for vehicles equipped with light bars to be used when tribal officers traveled off reservation. Nevertheless, Helmick recommends that the Tribe's officers not activate their vehicle's emergency light bars when traveling on public roads absent extraordinary conditions. This recommendation is at odds with the Deputation Agreement's requirement that the Tribe's commissioned police officers respond in emergency mode and travel to an emergency as quickly and as safely as possible, regardless of reservation boundaries.

On June 7, 2002, the Tribe filed a renewed motion for summary judgment, based primarily on the Deputation Agreement and Commissioner Helmick's letter. The district court again denied the Tribe's motion and, instead, granted summary judgment to Defendants.

In granting summary judgment to Defendants, the district court held that (1) the Deputation Agreement did not convert the Tribe's police vehicles into "authorized emergency vehicles" under Vehicle Code section 165(d); (2) the BIA requirement that tribal police vehicles have emergency lights did not constitute federal law preempting the state law prohibiting the Tribe's use or display of light bars while traveling public roads between reservation sections; and (3) the Commissioner's letter did not grant a permit to the Tribe allowing its vehicles to operate on state highways exempt from the Vehicle Code's prohibition on light bars. The Tribe filed a timely notice of appeal on November 12, 2002.

## DISCUSSION

### I. Jurisdiction and Standard of Review

■ We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We review the district court's order granting or denying summary judgment de novo. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir.2004). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. Federal Preemption

The Supreme Court has articulated two tests to deter mine whether a particular state law is preempted in litigation involv-

ing Indian tribes. Ostensibly, which test applies depends upon whether the activity to be regulated occurs on or off reservation. Here, the tribal activity at issue arguably takes place both on and off the Tribe's reservation. On the one hand, the Tribe's law enforcement and public safety activities occur within its reservation lands. However, to fully perform these law enforcement functions, the Tribe must occasionally use public roads to reach one of the noncontiguous portions of its reservation lands. It is only when tribal police officers cross into nonreservation lands that they are stopped and cited by local law enforcement for running afoul of the Vehicle Code. Because the regulated activity is the tribal police officers' display of emergency light bars when traveling on public roads, we conclude that the appropriate test is that for off-reservation activities as set forth in *Mescalero*.

 Under *Mescalero*, tribal activities occurring off reservation are subject to nondiscriminatory state laws absent an express federal law to the contrary. *Mescalero*, 411 U.S. at 148–49, 93 S.Ct. 1267 ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."). The *Mescalero* Court did not define what constitutes a "nondiscriminatory state law." In determining the meaning of the Supreme Court's phrase, we deem it appropriate to follow the same procedures we employ in ascertaining the meaning of an undefined statutory term. "When a statute does not define a term, a court should construe that term in accor-

dance with its 'ordinary, contemporary, common meaning.' " *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2003) (citation omitted).

 "To determine the 'plain meaning' of a term undefined by a statute, resort to a dictionary is permissible." *Id.* "Discrimination" is defined as "[d]ifferential treatment; esp., a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." Black's Law Dictionary (8th ed.2004); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (defining equal protection); *Salt River Pima–Maricopa Indian Cmty. v. Yavapai County*, 50 F.3d 739 (9th Cir.1995) (noting that tax is discriminatory if it treats similarly situated groups differently). It is this commonsense definition we employ here in finding that application of the challenged Vehicle Code sections to the Tribe is not nondiscriminatory and, hence, that the prohibition against the Tribe's display of light bars cannot be sustained.[9]

It is clear that the challenged Vehicle Code sections do not treat the Tribe's police force the same as other law enforcement entities within California. California permits all state, county, and city law enforcement officials within the state to display and to use emergency light bars. *See* Cal. Veh.Code § 165(b)(1), (e). It also permits private security companies to display, but not to activate, amber light bars when their vehicles travel on public road-

9. Because we agree with the Tribe that applying the light bar prohibition to its police vehicles is discriminatory, we do not reach the Tribe's other arguments, namely that Commissioner Helmick's May 6, 2002 letter to the Tribe constitutes a "permit" under section 165(f) for the Tribe to use light bars, or that when operating under the Deputation Agreement the Tribe's police vehicles meet the definition of an "authorized emergency vehicle" under section 165(e).

ways.[10] *See id.* In addition, law enforcement officials from the bordering states of Oregon, Nevada, and Arizona are permitted not only to display light bars, but to *activate* those light bars on California's roads within fifty miles of the California border in pursuit of their duties. *See id.;* Cal.Penal Code § 830.39(defining peace officer to include "[a]ny regularly employed law enforcement officer of the Oregon State Police, the Nevada Department of Motor Vehicles and Public Safety, or the Arizona Department of Public Safety"). Tribal officers from the Washoe Tribe, whose reservation occupies territory in both California and Nevada, are likewise permitted to display and to use emergency light bars on their vehicles while traveling on California's public roads. *See* Cal.Penal Code § 830.8(e). Finally, all other federal law enforcement officials are permitted to display and to use light bars while traveling on California roads. *See* Cal. Veh.Code § 165(b)(1), (e).[11]

While it is true that "[t]ribal reservations are not States," *White Mountain,* 448

U.S. at 143, 100 S.Ct. 2578, the relevant comparison here is between law enforcement agencies, not states.[12] We are not suggesting that the Tribe is similarly situated to Arizona, Nevada, or Oregon, but rather, that its law enforcement agency is similarly situated to the law enforcement agencies of those states. Further, under the Deputation Agreement, the Tribe's police department is similarly situated to other federal law enforcement agencies.

As a result of the Deputation Agreement, nearly all of the Tribe's officers are commissioned officers of the BIA. These commissioned officers exercise federal law enforcement powers and are deemed to be federal employees for liability coverage purposes. Indeed, under the Deputation Agreement, the Tribe's BIA-commissioned officers are granted the same law enforcement authority as officers of the BIA: like BIA agents, the Tribe's commissioned offers are authorized to enforce "[a]ll Federal criminal laws applicable to Indian country." [13] As the BIA has pointed out, these

---

10. In relevant part, section 25279 provides:

 Vehicles owned by a private security agency ... may be equipped with a flashing amber warning light system while the vehicle is operated on a highway, if the vehicle is in compliance with Section 27605 and is distinctively marked with the words "PRIVATE SECURITY" or "SECURITY PATROL" on the rear and both sides of the vehicle in a size that is legible from a distance of not less than 50 feet.
 Cal. Veh.Code § 25279(b)(1).

11. California Vehicle Code section 165 includes in its definition of authorized emergency vehicles "[a]ny publicly owned vehicle operated by ... (1) Any federal, state, or local agency, department, or district employing peace officers as that term is defined in Chapter 4.5(commencing with Section 830) of Part 2 of Title 3 of the Penal Code, for use by those officers in the performance of their duties." Cal. Veh.Code § 165(b)(1). It also includes "[a]ny vehicle owned or operated by any department or agency of the United

States government when the vehicle is used in responding to emergency fire, ambulance, or lifesaving calls or is actively engaged in law enforcement work." Cal. Veh.Code § 165(e).

12. Nor, as suggested by Defendants, is the comparison one between the Tribe and individual California residents. The issue here is not whether *any* tribal member may operate a vehicle equipped with emergency light bars, but whether the Tribe's trained, federally-commissioned, law enforcement officers may do so. Thus, the comparison is between the Tribe's police department and the law enforcement agencies of other jurisdictions.

13. That its commissioned officers are not authorized to enforce all federal laws is not relevant to our analysis. Its jurisdiction is the same as the BIA, whose officers are permitted to operate vehicles displaying light bars on California roadways. Furthermore, many other federal agencies with similarly limited jurisdiction, such as Postal Service inspectors

commissioned officers "maintain their law enforcement responsibilities and certain authorities irrespective of whether they are located in Indian country." The vehicles the tribal officers operate are licensed by the U.S. government with license plates issued by the BIA. Moreover, tribal police officers are subject to the same BIA guidelines in operating their police vehicles, including the requirement that these vehicles be equipped with light bars as BIA's own agents. Finally, the Tribe's police department receives federal funding and its officers receive formal federal law enforcement training.

Defendants make several arguments to suggest that their refusal to permit the Tribe's police department to use emergency light bars is a nondiscriminatory, rational classification. Specifically, Defendants argue that the prohibition is justified because (1) the Tribe's use of light bars would threaten highway safety by causing motorists to slow down, (2) the Tribe's use of light bars would threaten public safety because tribal police officers may not be properly trained, and (3) the State has no control of the training of the Tribe's police officers. None of these arguments is convincing.

First, Defendants have failed to establish that occasionally slowed traffic is as harmful as they presume. Nor have Defendants explained why a concern with slowed traffic is more problematic with respect to the Tribe's police vehicles than with the other myriad vehicles—which include not only public law enforcement agencies, but also private companies—that are permitted to travel on California's highways with light bars affixed to their roofs. Second, Defendants have not provided any evidence that the Tribe has or

would employ untrained officers for its police department. Indeed, under the Deputation Agreement, the Tribe's BIA-commissioned officers are required to meet state Peace Officer Standards and Training requirements for certification as full-time peace officers and to undertake mandatory federal law enforcement training. Even if such concerns were warranted, they would apply equally to the law enforcement agencies of other jurisdictions that are permitted to display and use such light bars on California roads. Finally, while reciprocity agreements between California and its neighboring states may ensure compliance with California's officer training requirements, such agreements do not implicate federal law enforcement agencies or the Washoe Tribe's law enforcement officers. Nevertheless, the light-bar equipped vehicles of these jurisdictions are permitted to travel on California roads. Thus, we conclude that there is no rational distinction to justify prohibiting the Tribe's police vehicles from displaying light bars on its vehicles in defiance of BIA regulations and in disregard of its obligation to serve and to protect the members of its reservation community.

In fulfilling their law enforcement function, the Tribe's Public Safety Department is similarly situated to the other law enforcement agencies that are permitted to display and to use emergency light bars. Indeed, because of the Deputation Agreement, the Tribe's police officers occupy the same law enforcement realm as officers of the BIA. Despite these similarities, when the Tribe's Public Safety Department is compared to these other law enforcement agencies, it becomes clear that it is not being treated in a remotely similar manner. Instead, while other jurisdictions' law

---

and U.S. Fish and Wildlife Service officers, are permitted to display light bars on public roads.

enforcement officers are permitted to use and display emergency light bars throughout California, the Tribe's police officers are prohibited from even displaying inactivated lights on their vehicles while traveling the fourteen miles of public roads they must travel to fully perform their law enforcement and public safety duties. Prohibiting the Tribe's police vehicles from simply displaying emergency light bars while permitting similarly situated law enforcement agencies much wider latitude to display and to use such bars discriminates against the Tribe and unduly burdens its ability to effectively perform its on-reservation law enforcement functions, thus frustrating the federal policy supporting tribal self-government.

## CONCLUSION

Every law enforcement jurisdiction shares the same obligation and purpose: to protect and to serve their respective communities and citizens. We agree with the BIA that the boundaries of Indian country should not impede tribal officers' travel, use of marked vehicles, emergency response, or other aspects of their policing authority necessary to meet the officers' law enforcement obligations to their reservation community.

We find that application of the Vehicle Code to prohibit the tribal policing authority's display of emergency light bars does not constitute a "nondiscriminatory application of state law." Consequently, we hold that Defendants are precluded by the preemptive force of federal Indian law from prohibiting the Tribe's use and display of emergency light bars on its police vehicles when those vehicles are traveling on public roads in performance of the tribal officers' law enforcement functions. Accordingly, the district court's order grant-

ing summary judgment to Defendants is REVERSED.